*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KIMANI POSTON,

Defendant-Appellant.

UNPUBLISHED
April 15, 2025
9:47 AM

No. 371384
Oakland Circuit Court
LC No. 2022-280247-FH

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

In this interlocutory appeal, defendant, Kimani Poston, appeals by leave granted[1] the trial court's opinion and order denying his motion to suppress evidence obtained during a warrantless seizure and search. We conclude that the trial court correctly identified the seizure as an investigatory stop and correctly assessed its validity for reasonable suspicion. We also conclude that the trial court correctly found that there was reasonable suspicion supporting the investigatory stop. We therefore affirm.

## I. BACKGROUND

This case arises out of a warrantless seizure, specifically an investigatory stop, in May 2021. Poston was a passenger in one of the vehicles that police stopped. During the stop, police seized Poston. They also recovered a gun, a baggie appearing to contain crack cocaine, and a baggie appearing to contain Xanax from the front passenger floorboard of the car, where Poston had been sitting.

---

[1] *People v Poston*, unpublished order of the Court of Appeals, entered August 29, 2024 (Docket No. 371384).

The prosecution originally charged Poston with one count of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv);[2] two counts of carrying a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b; one count of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; and one count of carrying a concealed weapon, MCL 750.227. Poston moved to suppress, arguing that the officer who conducted the stop did not have a particularized suspicion that Poston was involved in criminal activity. The trial court held an evidentiary hearing.

At the evidentiary hearing, Sergeant Dan Main of the Oakland County Sheriff's Office (OCSO) testified that, at approximately 11:45 p.m. on May 5, 2021, he began conducting surveillance on a parking lot within a shopping center "in the area of Waldo and Huron" in Pontiac, Michigan. Sergeant Main identified the area as one known for drug trafficking activity. When Sergeant Main started his surveillance, a red Cadillac Escalade was parked "nosed up" to (i.e., facing) a liquor store, on the north side of the parking lot. He observed two men exit the Escalade, go into the liquor store for a few minutes, return to the car, and then move the Escalade to another parking space on the north side of the parking lot. Another car, a blue Chrysler 300, was also parked in the parking lot when Sergeant Main began his surveillance. The Chrysler 300 left the parking lot around the time the Escalade changed parking spots but later returned and parked on the north side of the parking lot. Around the time the Chrysler 300 returned, a white SUV arrived and parked on the north side of the parking lot. When the white SUV arrived, the Escalade moved again, following the white SUV, and parked directly next to it.

Once all three cars parked, two women exited the white SUV. One of the women got into the front passenger seat of the Chrysler 300 and the other got into the rear driver's side seat of the Escalade. The woman who got into the Chrysler 300 stayed there for a few minutes then got back into the SUV, and the Chrysler 300 drove away. Sergeant Main testified that, to him, the activity and behavior of the occupants of the cars, including people getting in and out of the cars, were indicative of a street-level drug transaction.

Shortly after the SUV parked, Sergeant Main called for backup, and OCSO Detective Nathaniel Rogers arrived to assist. Detective Rogers went to the driver's side of the Escalade and Sergeant Main went to the passenger side. When they approached the Escalade, there were three passengers inside: Michael Upshaw in the driver's seat; Poston in the front passenger seat; and an unidentified woman in the back seat. Detective Rogers spoke to Upshaw and, upon learning that he did not have identification, removed him from the Escalade and secured him in a patrol car.

After securing Upshaw, Detective Rogers came to the passenger side of the Escalade and stood behind Sergeant Main, at which point Sergeant Main opened the front passenger door and told Poston to step out of the car while facing away from him. Poston did not immediately or

---

[2] The prosecution filed several amended informations after the trial court held the preliminary examination on March 17, 2022. The most recent amended information, filed on November 20, 2023, charges Poston with one count of possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(v), instead of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv).

completely comply with Sergeant Main's instruction. Instead, he faced Sergeant Main while stepping out of the car and, according to Sergeant Main, "started to move toward" him. Sergeant Main then pushed Poston against the car, turned him around, and told Poston to put his hands behind his back, which he did. While Poston was stepping out of the car, Detective Rogers saw a gun on the passenger side floorboard. Detective Rogers immediately alerted Sergeant Main to the presence of the gun by calling out "gun" without saying where the gun was. Sergeant Main then handcuffed Poston, searched him, and detained him in the back of a patrol car. Sergeant Main and Detective Rogers then secured the other passenger and searched the car.

After the evidentiary hearing, Poston filed a supplemental brief in which he expanded on his previous arguments and raised several new arguments. The trial court entered an opinion and order denying Poston's motion to suppress. Poston applied for leave to appeal with this Court, which this Court granted. *People v Poston*, unpublished order of the Court of Appeals, entered August 29, 2024 (Docket No. 371384). This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo "whether the Fourth Amendment was violated and whether an exclusionary rule applies." *People v Armstrong*, 344 Mich App 286, 294; 1 NW3d 299 (2022), aff'd ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 165233) (quotation marks and citation omitted; alteration in original). "Findings of fact made after a suppression hearing are reviewed for clear error, while the ultimate decision on a motion to suppress is reviewed de novo." *People v Vaughn*, 344 Mich App 539, 549; 1 NW3d 414 (2022). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citations omitted). "Thus, [t]he trial judge's resolution of a factual issue is entitled to deference." *Armstrong*, 344 Mich App at 294 (quotation marks and citation omitted; alteration in original).

## III. REASONABLE SUSPICION VERSUS PROBABLE CAUSE

Poston argues that the trial court erred by applying the wrong standard when evaluating the validity of the warrantless seizure. He argues that the trial court incorrectly applied the lower reasonable suspicion standard, which applies to investigatory stops, when it should have applied the higher probable cause standard because Poston was arrested, not merely detained. Poston claims Sergeant Main arrested him because Sergeant Main (1) used a "strong showing of physical force over" him when he grabbed Poston, spun him around, pushed him against the car, handcuffed and searched him, and (2) failed to question Poston about his presence at the scene. We disagree.

To preserve a claim that evidence should be suppressed pursuant to the exclusionary rule, a defendant must move to suppress the evidence before the trial court and "specify the same ground for objection that he asserts on appeal . . . ." *People v Clark*, 330 Mich App 392, 414; 948 NW2d 604 (2019). Although Poston raised the issue of the applicable standard of proof in his application

for leave to appeal and his brief on appeal, he did not raise this issue in his motion to suppress.[3] This aspect of Poston's search-and-seizure argument is therefore unpreserved and subject to plain-error analysis. *People v Hines*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 363151); slip op at 6.

To obtain relief under the plain-error rule, a defendant must prove that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected substantial rights—usually meaning that the error affected the outcome of the proceedings. *Id*. at ___; slip op at 6. "If a defendant satisfies these three requirements, we must determine whether the plain error warrants reversal, in other words, whether it seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id.* at ___; slip op at 6. (citation omitted). This last step conceptually overlaps with the third prong. *People v Davis*, 509 Mich 52, 75-76; 983 NW2d 325 (2022).

Poston's claim fails on the first two prongs because an error did not occur, let alone a plain one. "Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021). "In general, a search or seizure conducted without a warrant is presumptively unreasonable and, therefore, unconstitutional." *People v Wheeler*, 336 Mich App 361, 365; 970 NW2d 438 (2021). "One exception to the warrant requirement, however, is the *Terry* stop, also known as the investigatory stop." *Id.*, citing *Terry v Ohio*, 392 US 1, 30-31; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

In *People v Prude*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165664); slip op at 7-8, our Supreme Court summarized the law surrounding *Terry* stops as follows:

> Under *Terry*, an officer can detain a citizen for a brief investigatory stop if the officer has reasonable suspicion that the citizen is engaged in, or is about to be engaged in, criminal activity. While the level of suspicion required for a *Terry* seizure is less than that required for probable cause to arrest, an officer must have more than an inchoate or unparticularized suspicion or hunch[.] Rather, a *Terry* seizure is only lawful if an officer has an objectively reasonable particularized

---

[3] Throughout his brief in support of his motion to suppress, Poston referenced the applicable standard of proof as reasonable suspicion, not probable cause. At the beginning of the evidentiary hearing held in connection with Poston's motion to suppress, the trial court stated that the purpose of the hearing was "to make a finding whether the facts rise to the level of reasonable suspicion . . . ." Neither defense counsel nor the prosecution disagreed with the trial court's characterization. Poston raised the argument that probable cause was the correct standard of proof for the first time in his supplemental brief filed *after* the evidentiary hearing on his motion. The trial court made clear at the evidentiary hearing that the supplemental briefs submitted by the parties after the hearing, if any, were intended to direct the trial court to additional caselaw or apply the law to a brief summary of facts, with the ultimate question at issue being whether reasonable suspicion existed. The trial court did not address Poston's newly-raised issue of the applicable standard of proof in its opinion and order entered after the evidentiary hearing.

suspicion that the specific individual being stopped is engaged in wrongdoing. Whether this standard is met in a particular case is fact-specific and requires an analysis of the totality of the circumstances known by the officer when the seizure occurred. [Quotation marks, citations, and emphasis omitted; alteration in original.]

"[T]he level of suspicion required for a *Terry* seizure is less than that required for probable cause to arrest . . . ," or the probable cause necessary for a longer seizure or more invasive search. See *id*.

The trial court did not plainly err by analyzing Poston's motion to suppress under a reasonable suspicion standard. As later discussed more completely, the trial court properly determined that Sergeant Main had reasonable suspicion to believe the Escalade was involved in an illegal drug transaction. Having the requisite reasonable suspicion, Sergeant Main was permitted to detain Poston for a brief investigatory stop. *Prude*, ___ Mich at ___; slip op at 7. This issue essentially asks whether Sergeant Main's conduct elevated this seizure from an investigatory stop to an arrest, which would require a heightened standard. Although Sergeant Main asked Poston to get out of the car during the stop, this did not necessarily turn the detainment into an arrest. See *People v Chapo*, 283 Mich App 360, 368; 770 NW2d 68 (2009) ("A police officer may order occupants to get out of a vehicle, pending the completion of a traffic stop, without violating the Fourth Amendment's proscription against unreasonable searches and seizures.").

Sergeant Main testified that he turned Poston around and pushed him against the car because Poston failed to comply with Sergeant Main's orders while stepping out of the car. At that point, he was seized, but not yet arrested. Sergeant Main did not handcuff Poston until Detective Rogers alerted him to the presence of a gun on the front passenger floorboard, where Poston had just been sitting. In short, Detective Rogers located the gun before Poston was arrested. Finding the gun changed the nature of the detention and eventual more invasive search.

We acknowledge that the act of handcuffing a person does not necessarily change an investigatory stop into an arrest, particularly if an officer's reasonable desire to minimize risk of harm prompts the handcuffing. See *People v Zuccarini*, 172 Mich App 11, 14; 431 NW2d 446 (1988) (finding the defendant was detained, not arrested, where the officer's use of handcuffs on the defendant "was a reasonable, limited intrusion of [the defendant's] liberty under the circumstances" and noting that "the minimization of risk of harm to both the police and the occupants by exercising unquestionable command over a situation is a legitimate interest which must be considered in determining whether the detention was justified.").[4] But Poston was not under arrest when Detective Rogers identified the gun and Sergeant Main handcuffed him.

---

[4] Although this case is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless has precedential effect under the rule of stare decisis pursuant to MCR 7.215(C)(2). See *Legacy Custom Builders, Inc v Rogers*, 345 Mich App 514, 525 n 1; 8 NW3d 207 (2023).

Once Poston was out of the car, Detective Rogers saw the gun and suspected drugs in plain view on the front passenger floorboard. "While many warrantless searches are unreasonable pursuant to the warrant requirement, the United States Supreme Court has articulated several instances in which warrantless searches are reasonable." *Armstrong*, 344 Mich App at 302 (quotation marks and citation omitted). One such instance is the plain-view doctrine, "which allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *Id*. (quotation marks and citation omitted). Poston was detained when he got out of the car. Detective Rogers was lawfully near the car assisting Sergeant Main with the investigatory stop when he saw the gun and baggies of suspected drugs in plain view. The incriminating nature of the substances in the baggies was immediately apparent to Detective Rogers, who suspected the baggies to contain prescription pills and cocaine.

On this record, Poston has failed to demonstrate that he was arrested rather than detained. Accordingly, he has not demonstrated that the trial court clearly erred in applying the reasonable suspicion standard when considering his motion to suppress.

## IV. THERE WAS REASONABLE SUSPICION TO SUPPORT POSTON'S SEIZURE AND INVESTIGATORY STOP

Having concluded that this seizure—at least prior to the recovery of the gun—was an investigatory stop subject to reasonable suspicion, we turn to Poston's next issue. Poston argues that the trial court erred by finding that reasonable suspicion existed to justify the investigatory stop because Sergeant Main failed to articulate how Poston's conduct constituted potentially criminal behavior, and the totality of the circumstances surrounding the incident did not provide reasonable suspicion supporting the investigatory stop. We disagree.[5]

As noted, "[u]nder *Terry*, an officer can detain a citizen for a brief investigatory stop if the officer has reasonable suspicion that the citizen is engaged in, or is about to be engaged in, criminal activity. *Prude*, ___ Mich at ___; slip op at 7 (quotation marks omitted). "[I]n determining whether the totality of the circumstances provide reasonable suspicion to support an investigatory stop, those circumstances must be viewed as understood and interpreted by law enforcement officers, not legal scholars. Also, common sense and everyday life experiences predominate over uncompromising standards." *People v Wheeler*, 336 Mich App 361, 366; 970 NW2d 438 (2021) (quotation marks and citations omitted; alteration in original). "[I]n some circumstances, individual factors that would be insufficient on their own to justify a *Terry* stop can, in the aggregate, provide reasonable suspicion under the totality of the circumstances." *Prude*, ___ Mich at ___; slip op at 12. "However, this is only so if the individual factors collectively . . .

---

[5] Unlike Poston's other claim, Poston preserved this issue by raising it below. To preserve a claim that evidence should be suppressed pursuant to the exclusionary rule, a defendant must move to suppress the evidence before the trial court and "specify the same ground for objection that he asserts on appeal . . . ." *Clark*, 330 Mich App at 414. Poston moved to suppress in the trial court, arguing that Sergeant Main lacked reasonable suspicion to justify the search and seizure of Poston, and he raises this same argument on appeal. This issue is therefore preserved.

are greater than the sum of their parts, and build to form the requisite objective basis for the particularized suspicion that criminal wrongdoing is afoot . . . ." *Id*. at ___; slip op at 12-13 (quotation marks omitted; alterations in original). In *Prude*, our Supreme Court held that an individual's presence in a high-crime area, alone, "does not provide particularized suspicion that they were engaged in any criminal activity . . . ." *Id*. at ___; slip op at 2.

Here, under the totality of the circumstances, Sergeant Main had reasonable suspicion to believe the Escalade was involved in an illegal drug transaction. Sergeant Main's testimony indicated that he had extensive experience in surveillance, drug crime investigations, and investigatory stops of cars suspected of involvement in drug transactions. He testified that he was familiar with behaviors of people engaging in drug transactions. Sergeant Main knew, from his own experience, that the area where the investigatory stop ultimately took place was a common area for drug transactions, and that is why he chose to surveil that area on the night in question. Sergeant Main provided a general description of behaviors commonly seen in connection with drug transactions, and these behaviors matched the behavior Sergeant Main later described as standing out to him as indicative of a potential drug transaction in this case—i.e., the behavior and interactions of the occupants of the three cars stood out to him as indicative of a street-level drug transaction, especially the two women getting out of the SUV and getting into the Chrysler 300 and Escalade, respectively.

Sergeant Main's testimony described additional movements made by the three cars and their occupants that, taken together, are suspicious, including: (1) the Escalade parking in three different spots in the parking lot in the short time Sergeant Main observed the area; (2) the Chrysler 300 leaving the parking lot and coming back within a short timeframe; (3) the SUV arriving at the parking lot around the same time the Chrysler 300 returned, and the two cars parking near each other; (4) the Escalade moving once the SUV arrived and parking near the SUV and Chrysler 300; (5) two women getting out of the SUV and getting into the Escalade and Chrysler 300, respectively; (6) the woman who got into the Chrysler 300 staying inside that car for only a few minutes before getting back into the SUV; and (7) the Chrysler 300 leaving again once the woman got out, despite no one from the Chrysler 300 ever going inside the liquor store. On this record, we are not left with a definite and firm conviction that the trial court made a mistake and clearly erred by finding that Sergeant Main had an objectively reasonable, particularized suspicion that Poston was engaged in a drug transaction when the investigatory stop occurred. *Id*. at 7.

It is worth noting that Poston repeatedly relied on *People v LoCicero*, 453 Mich 496; 556 NW2d 498 (1996), to support his argument that Sergeant Main lacked reasonable suspicion to conduct the investigatory stop. But Poston's reliance is misplaced. In *LoCicero*, an officer testified at a preliminary examination that he believed a possible drug transaction was occurring when he observed a Pontiac Trans Am occupied by two people loop around a hotel parking lot and drive toward a Ford in the back lot of the hotel. *Id*. at 498-499, 505. After meeting for a moment, the cars both left the hotel parking lot and drove to a second parking lot. *Id*. There, the cars parked in an unlit area of the lot and the passenger of the Trans Am got into the Ford for a few minutes; the Ford remained running with the lights off during this time. *Id*. The driver of the Trans Am walked around the parking lot and looked around for less than a minute. *Id*. Both cars then left the parking lot. *Id*. The officer testified that he based his belief that there was a possible drug transaction occurring on the basis of the cars meeting at the hotel, the cars driving together to the

second parking lot, and the movements of the Trans Am passenger and driver at the second parking lot. *Id*. at 505.

The *LoCicero* Court held that the investigatory stop at issue violated the Fourth Amendment because the officer's observations did not demonstrate reasonable suspicion sufficient to justify the stop. *Id*. at 507-508. The *LoCicero* Court emphasized that an officer who testifies that he made inferences on the basis of his experience and training "is obliged to articulate how the behavior that he observed suggested, in light of his experience and training, an inference of criminal activity," which the officer in *LoCicero* did not do. *Id*. at 505-506. The *LoCicero* Court compared the facts at issue there with several other cases in which Michigan courts found reasonable suspicion for investigatory stops and noted that, in those cases, there were more indicators of suspicious activity, and the officers explained "how the inferences they drew from their observations were based on their training and experience in similar circumstances . . . ." *Id*. at 506-507. Here, unlike in *LoCicero*, the stop took place in a high-crime area. Moreover, Sergeant Main testified that he had extensive experience in drug-related surveillance, investigation, and stops, including previous arrests for similar offenses in the same area. Sergeant Main described some behaviors associated with street-level drug transactions, such as short meetings, and this description was consistent with the specific behavior of the passengers of the cars that drew Sergeant Main's attention before the stop.

Finally, we note that Poston challenged Sergeant Main's credibility on the basis that Sergeant Main: (1) did not record his time surveilling the scene and made no efforts to obtain video footage from stores in the parking lot; (2) failed to disclose in his police report that he had previous contacts with Poston and Upshaw; (3) denied having personal biases or prejudices; and (4) had not witnessed drug transactions in that area for several years before the stop. We find Poston's challenge to Sergeant Main's credibility unpersuasive.

We review findings of fact from a suppression hearing for clear error, *Vaughn*, 344 Mich App at 549, and "[t]he trial judge's resolution of a factual issue is entitled to deference," *Armstrong*, 344 Mich App at 294 (quotation marks and citation omitted; alteration in original). At the evidentiary hearing, Sergeant Main provided the sole testimony regarding the circumstances leading up to the investigatory stop. The trial court's reliance on Sergeant Main's testimony for its conclusion that reasonable suspicion existed indicates that the trial court found his testimony credible. The record does not contain any evidence that Sergeant Main lacks credibility. Giving deference to the trial court's factual determinations, *id*., we are not left with a definite and firm conviction that the trial court made a mistake in relying on Sergeant Main's testimony.

We affirm.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood

-8-